Neil BERGQUIST, Housing Coordinator of the City of Fargo Minimum Housing Standards Division, and the City of Fargo, North Dakota, a Municipal Corporation, Plaintiffs and Appellees,

v.

Evylin Hemple EICHELBERGER, a/k/a "Evylin", Defendant and Appellant.

Civ. No. 9390.

Supreme Court of North Dakota.

Jan. 19, 1978.

Rehearing Denied Feb. 16, 1978.

Solberg, Stewart & Boulger, Fargo, for plaintiffs and appellees, argued by John V. Boulger, Fargo.

Evylin Hemple Eichelberger, a/k/a "Evylin", pro se.

ERICKSTAD, Chief Justice.

This is an appeal by Evylin Hemple Eichelberger (who prefers to be referred to as Evylin), defendant and appellant, from a judgment of the Cass County District Court which found in favor of Neil Bergquist, Housing Coordinator of the City of Fargo, Minimum Housing Standards Division, and the City of Fargo, North Dakota, a municipal corporation, plaintiffs and appellees. The judgment restrains and enjoins Evylin from interfering with the demolition of a building owned by her which was found by the City Commission of Fargo to be a dangerous building and a public nuisance.

The facts relevant to this appeal are not in dispute. Evylin, who prepared her own brief and argued her case in our court, is the owner of a house located at 1023 South Fourth Street in the City of Fargo. She was absent from this property from May of 1969 until some time in 1972. During this time, no arrangements were made to care for this property. In 1970, Bergquist informed Evylin of the condition of the prop-

erty by certified mail. In 1975, after no significant improvements were made in the condition of the property, Bergquist informed the City Commissioners of the defects in the property. In September of 1975, Evylin was present at a City Commission meeting when a complaint was received as to the condition of the property and it was decided that she be sent written notice that her house was a "dangerous building" in accordance with the City of Fargo Revised Ordinances of 1965, Article 21–04. In October of 1975, the City Commissioners again reviewed the problem, and suggested that Evylin look into the possibility of applying for community development funds to help finance the repairs to her house. Mr. Bergquist, at that October meeting, also stated that he had suggested to Evylin that various city departments, such as the health department, might be able to assist her.

Due to the lack of improvement in the condition of the property, notice of hearing and notice to show cause were served on Evylin by certified mail on December 23, 1976. These documents informed Evylin that a hearing would be held on January 24, 1977, at a meeting of the Fargo Board of City Commissioners, at which time she should show cause why her building should not be declared to be a "dangerous building" and be repaired, vacated, or demolished. This hearing, at the request of Evylin, was postponed to February 7, 1977. At the hearing, evidence was presented to the Commissioners indicating the condition of the property. Evylin was also present and was afforded an opportunity to present evidence relative to the issue.

As a result of that hearing on February 7, 1977, the Board of Commissioners of the City of Fargo issued findings of fact and an order declaring Evylin's house to be a "dangerous building" and ordering its demolition. In its findings, the City Commission stated:

"2. That the following conditions exist with respect to said property:

Unscreened attic vents; unsecured doors; no windows in basement windows (only screens); rotted steps; electrical wiring cut and electrical fixtures and switches removed; sink traps removed; basement wall cracked and pushed in; wood support posts in basement have extensive dry rot; lack of impervious flooring; deteriorated roof in poor condition.

"3. That the building situated on the above described premises is deemed to be a dangerous building in the following particulars:

a. Said building is more than thirty-three percent damaged or deteriorated in supporting members;

b. Is so dilapidated, decayed, unsafe, unsanitary and utterly fails to provide the amenities essential to decent living that it is unfit for human habitation and is likely to cause or aggravate sickness or disease so as to work injury to the health, morals, safety or general welfare of those living therein.

c. Has inadequate light, air, and sanitation facilities to protect the health, morals, safety or general welfare of human beings who may reside therein."

The findings of fact and order were served on Evylin by mail on February 18, 1977.

Ordinance number 21–0412 permits an appeal to the district court from an order of demolition issued by the Board of City Commissioners. The appeal must be taken within 30 days of the date of service of the order. Evylin did not appeal from the order to the district court within that 30-day period.

On May 11, 1977, Evylin was served with a notice of intended demolition, which informed her that her house would be demolished on May 24, 1977. When the demolition crew arrived at the premises, Evylin refused to permit the demolition of her house. Bergquist and the City of Fargo, as a result of Evylin's action, applied to the district court, First Judicial District, Cass County, for a restraining order enjoining Evylin from interfering with the demolition of the property. Notice of the hearing of that application was served on Evylin on May 28, 1977.

At the hearing held on June 13, 1977, Evylin chose to represent herself as she had earlier done at the City Commission meetings. The district court judge encouraged her to seek the assistance of counsel, and even recessed the hearing to give Evylin time to attain counsel. She chose not to do so. Testimony was then taken, after which findings of fact, conclusions of law, and order for judgment were prepared. The judgment was entered on June 23, 1977, restraining and enjoining Evylin from interfering with the demolition of the building in question.

It is from this judgment that Evylin appeals to this court. Her basic contention on this appeal is that the City of Fargo does not have the authority to order the demolition of private property.

The City, in ordering the demolition of Evylin's house, acted pursuant to Article 21–04 of the Revised Ordinances of the City of Fargo. This article sets out the definition of "dangerous buildings" and establishes a procedure under which the City Commission can order the repair, vacation, or demolition of such buildings. This article of the City of Fargo Ordinances was enacted by the City of Fargo pursuant to Section 40–05–02, N.D.C.C., dealing with the powers of municipalities. That section states:

"The city council in a city operating under the council form of government and the board of city commissioners in a city operating under the commission system of government, in addition to the powers possessed by all municipalities, shall have power:

*    *    *    *    *    *

24. *Removal of substandard buildings or structures.* The governing body of any city shall have the authority to provide by ordinance for the demolition, repair or removal of any building or structure located within the limits of such city or other territory under its jurisdiction, which creates a fire hazard, is dangerous to the safety of the occupants or persons frequenting such premises, or is permitted by the owner to remain in a dilapidated condition.

Any such ordinance shall provide for written notice to the owner of a hearing by the governing body before final action is taken by such body. It shall also provide a reasonable time within which an appeal may be taken by the owner from any final order entered by such governing body to a court of competent jurisdiction. This subsection shall in no way limit or restrict any authority which is now or may hereafter be vested in the state fire marshal for the regulation or control of such buildings or structures." § 40–05–02(24), N.D.C.C.

▉ This court, in the past, has twice dealt with city ordinances enacted pursuant to Section 40–05–02(24), N.D.C.C. *See Sloven v. Olson,* 98 N.W.2d 115 (N.D.1959) and *Soderfelt v. City of Drayton,* 59 N.W.2d 502 (N.D.1953). In those cases, the constitutionality of the State statute and of the city ordinances enacted pursuant to that section were upheld. Applying the reasoning of those cases to this case, we conclude that a city has the power to order the demolition of private buildings if it enacts an appropriate ordinance pursuant to Section 40–05–02, N.D.C.C., and complies therewith. The City of Fargo enacted such an ordinance, Article 21–04, and it was under that ordinance that the city acted in this case. It has not been seriously contended that the city failed to comply with either the appropriate state law or the appropriate city ordinance.

▉ Evylin, as we stated earlier, appeals only from the order of the district court enjoining her from interfering with the demolition of the property. She did not appeal, as she was entitled to do, from the findings and order of the Fargo City Commission finding her property to be a dangerous building and ordering its demolition. Evylin cannot now collaterally challenge the findings and order of the City Commission. In *Olson v. Cass County,* 253 N.W.2d 179 (N.D.1977), we said:

"If their grievance is not jurisdictional, but goes instead to the correctness of the decision, then it cannot be litigated collaterally and must be attacked directly." 253 N.W.2d at 182–183.

As the City Commission of Fargo had the jurisdiction to hear this matter, its decision cannot be attacked collaterally.

The only question before us then is whether or not the district court acted properly in restraining Evylin from interfering with the demolition of her property. Because Evylin did not appeal from the order of the Fargo City Commission, the district court had no choice but to enjoin and restrain her from interfering with the demolition of her property.

The judgment of the district court restraining and enjoining Evylin from interfering with the demolition of the property in question is therefore affirmed.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.